| | | |
|---|---|---|
| **FLORENCE R. MCWHORTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:14-cv-01658** |
| **v.** | ) | **Judge Sharp** |
| | ) | |
| **NANCY BERRYHILL,**[1] | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the Court is Plaintiff's *Motion for Judgment on the Administrative Record* (Docket Entry No. 12). The motion has been fully briefed by the parties.

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance under Title II , as provided by the Social Security Act ("the Act"). Upon review of the administrative record as a whole and consideration of the parties' filings, the Court finds that the Commissioner's determination that Plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g). Plaintiff's motion will be denied.

## I. INTRODUCTION

Plaintiff, Florence R. Mcwhorter, filed a Title II application for disability insurance on March 21, 2011, alleging disability as of December 18, 2008. (Tr. 102-03). Plaintiff's claim was

---

[1]Nancy Berryhill became acting Commissioner for the Social Security Administration on January 23, 2017, and is therefore substituted as Defendant. *See* Fed. R. Civ. P. 25(d).

denied at the initial level on July 12, 2011, and on reconsideration on October 28, 2011. (Tr. 61-66, 70-72). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on March 11, 2013. (Tr. 9, 25, 74-75). On April 11, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 6-20). Plaintiff timely filed an appeal with the Appeals Council, which issued a written notice of denial on June 26, 2014. (Tr. 1-3). This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. ALJ FINDINGS

The ALJ issued an unfavorable decision on April 11, 2013. (AR p. 6). Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in substantial gainful activity since December 18, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: lumbar fusion; fibromyalgia; and post-surgery on right wrist and left thumb with pins (20 CFR 404.1520(c).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) that is limited to lifting and carrying twenty pounds frequently and ten pounds occasionally;[2] standing and/or walking for six

---

[2]The Court notes an obvious scrivener's error in the ALJ's decision where the ALJ transposed the words "frequently" and "occasionally," as 20 C.F.R. § 404.1567(b) defines "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." In his hypothetical questions to the vocational expert, the ALJ included the correct definition of light work. (Tr. 53, 58). The parties do not dispute that the ALJ determined

hours in an eight-hour workday; sitting for six hours in an eight-hour workday; performing occasional postural activities with no use of ladders; occasionally handling with her light arm; and occasionally thumb-gripping with her left hand. Additionally, she needs a sit/stand option in thirty-minute intervals.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on September 28, 1959 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 18, 2008, through the date of this decision (20 CFR 404.1520(g)).

(AR pp. 11-20).

---

that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b). From the ALJ's opinion and a review of the record, it is clear that the ALJ simply made a drafting error and that this error does not contradict the ALJ's ultimate findings. Such error is harmless. *Lete v. Colvin*, No. CIV.A. 14-66-GFVT, 2015 WL 4548736, at *5 (E.D. Ky. July 28, 2015); *Parrish v. Colvin*, No. 3:13-01218, 2014 WL 4053397, at *9 (M.D. Tenn. Aug. 15, 2014); report and recommendation adopted, No. 3:13-01218, 2015 WL 4994239 (M.D. Tenn. Aug. 20, 2015); *Wearen v. Colvin*, No. 13-CV-6189P, 2015 WL 1038236, at *13-14 (W.D.N.Y. Mar. 10, 2015) (collecting cases); *Ortiz v. Comm'r of Soc. Sec.*, No. 6:10-CV-678-ORL-GJK, 2012 WL 603223, at *7 (M.D. Fla. Feb. 24, 2012)

### III.  REVIEW OF THE RECORD

The following summary of the medical record is taken from the ALJ's decision:

The claimant has a history of degenerative changes of the lumbar spine most severe at L4-5 and post-operative changes related to a prior left hemilaminectomy at L5-S1 with mild to moderate left foraminal stenosis as demonstrated by an MRI performed on November 17, 2009.  A subsequent MRI revealed moderate central stenosis at L3-4 due to disc bulging and facet hypertrophy.  After conservative treatment measures and epidural steroid injections failed to relieve the claimant's symptoms, she underwent a decompressive lumbar laminectomy and fusion at L4-5 and L5-Sl on December  18, 2008, the alleged onset date.  Exhibits lF and 3F.

A follow-up treatment note dated January 15, 2009, from the claimant's orthopedic surgeon, Edward Mackey, M.D., reflects that it was planned for the claimant to return to work in two months on light duty.  However, a couple of months later it was noted that she was improving slowly and still had lingering back discomfort with burning pain in her toes although an X-ray showed that her fusion was well-aligned. She was prescribed Celebrex and Lyrica and given refills of Lortab, and on April 23, 2009, Dr. Mackey ordered therapy for core strengthening with a transition to an independent gym program.  Despite the claimant's ongoing symptoms, Dr. Mackey gave her light duty restrictions of lifting no more than fifteen pounds, lifting no more than five pounds frequently, and sitting and standing without limitations.  Exhibit 3F.

On May 20, 2009, the claimant complained of worsening symptoms concerning for neuropathic pain, and she prescribed an increased dosage of Lyrica. However, it was noted that she still tried to return to her past work.  The following month, a lumbar MRI showed circumferential effacement of the epidural fat around the thecal sac at L4-5 and L5-S1, a well circumscribed  fluid collection in the laminectomy defect most indicative of a seroma, and mild enhancement of the disc and endplates of the intervertebral body graft placement due to either the claimant's recent surgery or early inflammatory changes.  Exhibit 3F.

On June 15, 2009, the claimant met with pain management provider Jeffrey Hazlewood, M.D., on referral from Dr. Mackey. She endorsed a "pressure, soreness type pain" in her lower back that radiated to her right lower extremity and caused numbness and tingling in her right toes. However, she endorsed no more than mild to moderate pain with medication with a pain rating of four to five on a ten-point scale with ten being the worst.  In addition to the claimant's symptoms, Dr. Hazlewood also noted that she had a history of left thumb surgery in 2002-2003 and two right wrist surgeries in 2003-2004.  Exhibit 2F.

On examination, Dr. Hazlewood observed that the claimant had pain getting on the examination table.  She had spasms throughout her lumbar spine, diminished lumbar

range of motion, decreased pinprick sensation in the right posterior calf, and slightly diminished motor strength in the right hip flexor and right anterior tibialis with give away. Otherwise, she had good range of motion throughout all extremities, negative straight leg raises, normal motor strength in the upper and lower extremities, normal reflexes, and normal sensation in the right medial foot and bilateral upper and left lower extremities. Based on his overall examination, Dr. Hazlewood diagnosed the claimant with chronic low back pain with a combination of mechanical and neuropathic pain, lumbar spasms, and sacroiliac joint pain "probably referred from the lumbar spine." She was continued on Lyrica, Celebrex, and Lortab and additionally prescribed Lidoderm patches. She was also advised to continue using a TENS unit and scheduled for sacroiliac joint injections. Exhibit 2F.

The next day, June 16, 2009, the claimant met with Dr. Mackey, who noted that she was doing well neurologically and had good motor function. However, she had increased pain with bilateral FABER test, and it was decided that she would proceed with the sacroiliac joint injections, which was performed by Dr. Hazlewood on July 7, 2009. Exhibits 2F and 3F.

At a follow-up visit to Dr. Mackey on July 28, 2009, it was noted that the claimant had tried to return to work but had been unable to do so. Nevertheless, it was determined that she was twenty-five percent better. A couple of months later, Dr. Mackey noted that the claimant had not been doing as well as he would have liked and that that he could not medically clear her to return to her past work. He instead decided to send her for a functional capacity evaluation. Exhibit 3F.

The actual findings of that functional capacity evaluation were not found in the provided records. However, based on the results of the evaluation, Dr. Mackey assessed permanent restrictions on October 21, 2009, of no lifting over five pounds frequently, thirty pounds maximum, ten pounds from floor to waist, ten pounds from waist to chest, and ten pounds overhead. He further opined that she needed to alternate between sitting and standing, sitting for forty-five minutes per hour and standing for fifteen minutes per hour. Such restrictions were not inconsistent with a physical examination conducted by Dr. Hazlewood just a few days prior on October 6, 2009, with findings of diminished lumbar range of motion but only mild spasms, non-antalgic gait, and good range of motion throughout the lower extremities. Exhibits 2F and 3F.

The following month on November 9, 2009, Dr. Mackey determined that the claimant had an overall impairment rating of twenty-two percent based on her persistent back symptoms. Exhibit 3F.

On follow-up visits to Dr. Hazlewood, the claimant endorsed having no more than moderate pain with medication, and she stated that medication allowed her to function and have a better quality of life. Examinations continued to demonstrate

decreased lumbar range of motion, spasms, and tenderness. However, they also showed negative straight leg raises, non-antalgic gait, and good range of motion throughout the lower extremities. Exhibit 16F.

Despite her ongoing symptoms, the claimant reported on April 21, 2010, that she had been looking for work while applying for disability, and on May 13, 2010, she mentioned that she had been walking thirty minutes one to two times a day for exercise. In July 2010, she experienced a significant flare-up in her low back pain, but on August 5, 2010, she reported having "dramatic improvement" after being prescribed Cymbalta. Exhibit 16F.

Several months later on October 21, 2010, Dr. Mackey noted that the claimant was doing well symptomatically and continuing with her exercise program. Exhibit 3F.

The claimant continued to endorse having moderate pain with medication, but on April 8, 2011, and May 5, 2011, she reported having a higher pain rating of six and seven, respectively. However, her physical examinations remained the same with findings of non-antalgic gait, negative straight leg raises, and good range of motion throughout the lower extremities. Exhibit 16F.

On May 31, 2011, the claimant underwent a medical consultative examination conducted by Deborah Morton, M.D. On examination, she had decreased lumbar, hip, left thumb, and knee range of motion; mildly positive straight leg raises bilaterally; diminished deep tendon reflexes in the lower extremities; diminished strength in the upper extremities; and absent Babinski reflexes. However, she had normal deep tendon reflexes in the upper extremities; normal gait, station, and gait maneuvers; normal strength in the lower extremities; normal sensation; and normal range of motion in her shoulders, elbows, wrists, and ankles. The claimant complained of fibromyalgia but had no pain on palpation of any trigger points. Exhibit 5F.

Based on her overall examination, Dr. Morton diagnosed the claimant with lumbar spine fusion status post injury, fibromyalgia, and left thumb decreased range of motion and opined sedentary work limitations. Exhibit 5F.

Following the consultative examination, the claimant met with an orthopedist on June 22, 2011, for evaluation of left sternoclavicular joint pain. On examination, she had a large prominence over her right sternoclavicular joint but full range of motion with good muscle strength and tone, negative drop arm, no crepitus, and no signs of instability. Nevertheless, she was diagnosed with right sternoclavicular joint prominence "most likely due to arthritis." The evaluating orthopedist determined that it was nothing more serious than that and recommended "just watching" the area. Exhibit 7F.

Remaining medical records from Dr. Hazlewood dated June 24, 2011, to February l5 , 2013, reflect that the claimant endorsed increasing pain even with medication but that her physical examinations remained rather unremarkable and virtually unchanged from those conducted by Dr. Hazlewood prior to the medical consultative examination. Specifically, Dr. Hazlewood's examinations consistently noted decreased lumbar range of motion but normal motor strength in the bilateral lower extremities, negative straight leg raises, non-antalgic gait, and good range of motion throughout the lower extremities. Additionally, on December 20, 2012, it was noted that the claimant had been "staying active." Exhibit 16F.

No additional medical records were provided.

Turning to the hearing testimony, the claimant testified that her pain never goes away. She stated that her pain level is a five to six on average days, a three to four on good days, and a nine on bad days. She testified that she has about fifteen to twenty bad days a month and more bad days in the winter. She testified that in 2008 and 2009 she had sharp pain that radiated down her leg but that she now has numbness in her leg with stabbing pain on bad days. She stated that she lies down during the day to get comfortable but does not take naps during the day.

When asked about her physical abilities, the claimant testified that she can stand ten to fifteen minutes at a time and sit ten minutes at a time. She stated that she used to walk six miles a day but cannot do that any longer. She testified that she lives alone and can do household chores but that her daughter and sister help with deep cleaning and a yardman does her yard work. She stated that she attends school functions for her ten-year-old grandson when she feels okay.

The claimant did not appear to be in significant pain while sitting and standing during the hearing. Additionally, she was observed moving [her] arms and hands while speaking.

In addition to her testimony, the claimant completed a pain questionnaire and function reports. In her pain questionnaire, she reported having lower back pain three times a week brought on by grocery shopping and walking. She claimed that her pain lasted anywhere from two hours to all day but added that medication helped to minimally relieve her pain for about tlu·ee to four hours. Exhibit 4E.

In her function reports, the claimant stated that she could perform self-care tasks, drive, shop, do light housecleaning, wash laundry and dishes, prepare meals, sew, play video games, and occasionally go out to restaurants. Exhibits 6E and 9E.

(AR pp. 13-17).

## IV. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made any legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence has been defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court must examine the entire record to determine if the Commissioner's findings are supported by substantial evidence. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir.1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final

determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

## B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing her entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. See 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 CFR §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational

requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are of sufficient severity as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 CFR §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 CFR § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the

claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In order to rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the five-step sequential evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

**C. Plaintiff's Assertions of Error**

Plaintiff argues that (1) the ALJ did not give appropriate weight to the opinion of Dr. Edward Mackey, Plaintiff's treating physician; (2) the ALJ failed to give proper weight to the opinion of

consultative examiner, Dr. Deborah Morton, who limited Plaintiff to sedentary work; (3) the ALJ

erred by giving great weight to the State agency medical consultants; (4) the ALJ failed to note Dr.

Jeffrey Hazlewood's objective findings; (5) Plaintiff's residual functional capacity was inaccurate;

(6) the ALJ erred in finding that Plaintiff's testimony was not fully credible; (7) the ALJ erred in

using a "sit and squirm" test; (8) the ALJ erred in using intermittent daily activities to support the

finding that Plaintiff was not disabled; (9) the ALJ erred in finding that Plaintiff's efforts to work

or find work indicated that she was not disabled; and (10) the ALJ's decision is not supported by

substantial evidence. (Docket Entry No. 13, at 15-23). Plaintiff contends that the Commissioner's

decision should be reversed under the fourth sentence of 42 U.S.C. § 405 (g). *Id*. at 24.

Sentence four of 42 U.S.C. § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record,
> a judgment affirming, modifying, or reversing the decision of the Commissioner of
> Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's]

decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous,

proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is

lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Additionally, a court can reverse

the decision and immediately award benefits if all essential factual issues have been resolved and

the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d

171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Plaintiff's

assertions of error are addressed below.

*1. The ALJ did not give appropriate weight to the opinion of Dr. Edward Mackey, Plaintiff's
treating physician.*

Plaintiff argues that the ALJ did not give appropriate weight to the opinion of Dr. Edward Mackey, Plaintiff's treating physician. Plaintiff asserts that on October 7, 2009, Dr. Mackey permanently restricted Plaintiff to: no lifting over 5 pounds frequently and 30 pounds maximum; 10 pounds floor-to-waist, 10 pounds waist-to-chest and 10 pounds overhead; and alternating sitting and standing, 45 minutes sitting per hour, 15 minutes standing per hour. (Docket Entry No. 13, at 15; Docket Entry No. 10, at 218). Plaintiff argues that, although the ALJ stated that he gave "significant" weight to Dr. Mackey's October 2009 opinion, the ALJ did not include any of Dr. Mackey's restrictions in his hypothetical question to the vocational expert. (Docket Entry No. 13, at 16-17; Docket Entry No. 10, at 53-58). In response, Defendant contends that the ALJ properly considered Dr. Mackey's opinion and gave it "significant" weight. (Docket Entry No. 18, at 4).

Social Security regulations address three classifications of medical sources: treating sources; examining but non-treating sources; and non-examining sources. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1502, 416.902. A treating source has a history of medical treatment and an ongoing treatment relationship with the plaintiff consistent with accepted medical practice. 20 C.F.R. §§ 404.1502, 416.902. An examining non-treating source has examined the plaintiff, but does not have an ongoing treatment relationship. *Id*. A non-examining source is a physician, psychologist, or other acceptable medical source who has not examined the plaintiff, but provides a medical or other opinion based upon medical and treatment records. *Id*.

The opinion of an examining non-treating source is given greater weight than that from a non-examining source and an opinion from a treating source is afforded greater weight than an examining non-treating source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (2)). "A treating physician's opinion is normally

entitled to substantial deference, but the ALJ is not bound by that opinion. The treating physician's opinion must be supported by sufficient medical data. *Jones*, 336 F.3d at 477 (citation omitted). Thus, "[t]reating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). "Moreover, when the physician is a specialist with respect to the medical condition at issue," the specialist's "opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527([c])(5)).

"If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones*, 336 F.3d at 477. The regulations provide that an ALJ must provide "good reasons" for discounting the weight of a treating source opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley*, 581 F.3d at 406-07 (6th Cir. 2009) (quoting SSR 96–2p, 1996 WL 374188, at *5).

The ALJ's conclusion regarding Plaintiff's RFC was based upon the following:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

Overall, the evidence of record does not support a finding of disability. The only significant objective findings were made by Dr. Morton, the medical consultative

examiner. However, Dr. Morton's one-time evaluation does not outweigh treatment records from Drs. Mackey and Hazlewood.

Following her surgery, the claimant was consistently given light duty restrictions by Dr. Mackey, her orthopedic surgeon, with permanent light duty restrictions assessed in October 2009, and she reported having no more than moderate pain with medication. An examination conducted the same month by Dr. Hazlewood, the claimant's pain management provider, supported the light duty restrictions as they demonstrated decreased lumbar range of motion, spasms, and decreased pinprick sensation in right lower extremity but otherwise good range of motion throughout all extremities, negative straight leg raises, normal motor strength in the upper and lower extremities, normal reflexes, and normal sensation in the right foot and bilateral upper and left lower extremities. Additionally, it was consistently noted that medications allowed the claimant to function and have a better quality of life.

Remaining treatment records from Dr. Hazlewood from 2010 to 2013 continued to be unremarkable concerning objective medical findings. Examinations consistently showed negative straight leg raises, non-antalgic gait, and normal motor strength and good range of motion in the lower extremities. Moreover, in April 2010, the claimant reported that she was looking for work while applying for disability, and in October 2010 it was noted that she was doing well symptomatically. The claimant subsequently endorsed having increased pain, but her physical examinations remained virtually unchanged. It was regularly noted that her medications allowed her to function and have a better life without any adverse side effects, and it was also noted that she stayed as active as she could.

The claimant did not require treatment for any residuals of her left thumb and right wrist surgeries. However, those impairments were taken into consideration when determining the claimant's residual functional capacity.

The claimant's reported activities per her function reports and testimony further support a finding of non-disability.

Lastly, the claimant testified that her medications cause sleepiness and weight gain. However, records show that the claimant denied having any adverse medication side effects. Exhibits 4E and 16F. Additionally, the claimant's weight was discussed above and found to be no more than mild in severity.

As for the opinion evidence, great weight is given to the State agency medical consultants light work assessments at Exhibits l0 F and 13F as they are supported by Dr. Mackey's permanent light duty restrictions; Dr. Hazlewood's consistent findings of negative straight leg raises, non- antalgic gait, and normal motor strength and good range of motion in the lower extremities; and the claimant's reported daily living activities. For the same reasons, significant weight is also given to Dr.

Mackey's permanent light restrictions in Exhibit 3F. However, Dr. Mackey's assessment is given less weight as it is unclear on what his restrictions were actually based. Nevertheless, a sit/stand option is incorporated into the claimant's residual functional capacity in consideration of Dr. Mackey's assessed restrictions and the claimant's testimony.

Additionally, crediting the claimant's history of left thumb and right wrist surgeries, the undersigned further limits the claimant to no more than occasional handling with the right hand and occasional thumb-gripping with the left hand.

Little weight is given to Dr. Morton's consultative examination assessment at Exhibit 5F as her sedentary limitations are overly restrictive given Dr. Mackey's permanent restrictions and Dr. Hazlewood's physical examinations.

(Tr. 17-18).

"The Social Security Act instructs that the ALJ--not a physician--ultimately determines a claimant's RFC." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."). "[T]he ALJ is charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Therefore, "[a]n ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron*, 391 F. App'x at 439. The RFC does not need to be based on a particular medical opinion. *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). The RFC does not need to correspond to a physician's opinion because the Commissioner has the final authority to make determinations or decisions on disability. *Rudd*, 531 F. App'x at 728.

Here, the ALJ recited Plaintiff's restrictions that Dr. Mackey ordered in October 2009. (Tr. 15). The ALJ noted that the actual findings of the functional capacity evaluation in which Dr. Mackey's assessment was based were not provided in the medical records. *Id.* The ALJ noted that Dr. Hazlewood on October 6, 2009, reported that Plaintiff had diminished lumbar range of motion but only mild spasms, non-antalgic gait, and good range of motion throughout the lower extremities. (Tr. 15, 17, 203). The ALJ also noted that Dr. Hazlewood consistently noted that medications allowed Plaintiff to function and have a better quality of life without adverse side effects and that treatment records from Dr. Hazlewood from 2010 to 2013 continued to be unremarkable, with examinations consistently showing negative straight leg raises, non-antalgic gait, and normal motor strength and good range of motion in the lower extremities. (Tr. 15-18, 190-99, 201). Dr. Hazlewood noted in December 2012 that Plaintiff was "staying active." (Tr. 16, 430). In May 2010, Dr. Hazlewood remarked that Plaintiff was walking thirty minutes one to two times a day for exercise, and on October 21, 2010, Dr. Mackey noted that Plaintiff was doing well symptomatically and was continuing with her exercise program. (Tr. 234, 384). The ALJ further noted that the medical record reflected that Plaintiff did not require treatment for any residuals of her left thumb and right wrist surgeries, but that those impairments were taken into consideration when determining Plaintiff's RFC. (Tr. 18).

As to the opinion evidence, although significant weight was given to Dr. Mackey's permanent light restrictions, the ALJ explained that Dr. Mackey's assessment was given less weight as it was unclear on what the restrictions were actually based. (Tr. 18). However, the ALJ included a sit/stand option into Plaintiff's RFC in consideration of Dr. Mackey's assessed restrictions and

Plaintiff's testimony. (Tr. 18). The Court notes that Dr. Mackey's assessment allows for lifting up to 30 pounds, whereas the ALJ's RFC limits lifting to 20 pounds. (Tr. 12, 218).

The record reflects that the ALJ gave significant weight to Dr. Mackey's opinion and that he provided good reasons for giving Dr. Mackey's assessment less weight. The Court finds that the ALJ demonstrated proper consideration of Dr. Mackey's opinion.

2. *The ALJ failed to give proper weight to the opinion of consultative examiner, Dr. Deborah Morton, who limited Plaintiff to sedentary work.*

Plaintiff contends that the ALJ erred in evaluating the opinion of Dr. Deborah Morton, the consultative physician, who limited Plaintiff to sedentary work. (Docket Entry No. 13, at 17). Plaintiff asserts that she "is not arguing that Dr. Morton's opinion should outweigh Dr. Mackey's opinion," but that "when Dr. Morton's complete opinion is combined with Dr. Mackey's opinion and Dr. Hazelwood's objective findings, it is obvious she cannot perform all the activities required for light work." (Docket Entry No. 19, at 3). Defendant contends that the ALJ properly explained that little weight was given to Dr. Morton's report because it was overly restrictive. (Docket Entry No. 18, at 7).

It is the function of the ALJ to resolve the conflicts between the medical opinions. *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins. The fact that Justice now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence."). Under SSR 96-7p, the ALJ is permitted to "consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." *See* SSR 96-7p; *Blankenship v. Comm'r of Soc. Sec.*, No. 14-2464, 2015 WL 5040223, at *10 (6th Cir. Aug. 26, 2015) (treating doctor's assertion that claimant was unable to walk from the parking lot to work was "seemingly contradicted by the

fact that Blankenship was able to walk unassisted from her car to the room where the hearing was being held."). The ALJ may rely on opinions from consulting doctors. *See Brown v. Comm'r of Soc. Sec.*, No. 14-1626, 2015 WL 163059, at *1 (6th Cir. Jan. 13, 2015) ("The ALJ gave 'some weight' to the opinions of three consulting physicians…"). While all medical opinions are evaluated as discussed in 20 C.F.R. § 404.1527, opinions by consulting or non-treating doctors need not be evaluated in accordance with the treating physician rules outlined by the Sixth Circuit. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x at 730 (citing 20 C.F.R. § 404.1527 and *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[T]he SSA requires ALJs to give reasons for only *treating* sources.") (emphasis in original).

At Defendant's request, Plaintiff was examined on May 31, 2011, by Dr. Deborah Morton, who opined that Plaintiff was limited to work in the sedentary category. (Tr. 15, 267). The ALJ noted that Plaintiff had some decreased range of motion and diminished strength and reflexes, but other reflexes were normal, and Plaintiff had a normal gait, normal strength in the lower extremities, normal sensation, and normal range of motion in her shoulders, elbows, wrists, and ankles. (Tr. 15-16, 264-66). Although Plaintiff complained of fibromyalgia, she did not have any pain on any trigger points. (Tr. 16, 264-66). The ALJ gave little weight to Dr. Morton's one time examination and assessment, finding the sedentary limitations were overly restrictive given Dr. Mackey's permanent restrictions and Dr. Hazlewood's physical examinations. (Tr. 18).

The Court finds that the ALJ properly considered and analyzed Dr. Morton's opinion in conjunction with the other medical evidence and that the ALJ did not err in assessing Dr. Morton's opinion.

*3. The ALJ erred by giving great weight to the State agency medical consultants.*

Plaintiff argues that "[i]t was error for the ALJ to rely upon opinions of non-examining doctors who did not see the complete file and whose opinions are not, in fact, supported by Dr. Mackey." (Docket Entry No. 13, at 19). Plaintiff asserts that one consultant did not see any records after July 12, 2011 (Tr. 291-298) and another consultant did not see any records after October 24, 2011 (Tr. 325-328). *Id.* at 18-19. Defendant argues that the ALJ did not err in considering the reports of the State agency medical consultants, particularly given Dr. Mackey's opinion that Plaintiff could work within the "light" exertional category. (Docket Entry No. 18, at 8-9).

"'State agency medical and psychological consultants . . . are highly qualified physicians [and] psychologists . . . who are also experts in Social Security disability evaluation,' and whose findings and opinions the ALJ 'must consider . . . as opinion evidence.'" *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 712 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(e)(2)(i)). As stated *supra*, while all medical opinions are evaluated as discussed in 20 C.F.R. § 404.1527, opinions by consulting or non-treating doctors need not be evaluated in accordance with the treating physician rules outlined by the Sixth Circuit. *See Rudd*, 531 F. App'x at 730.

The ALJ stated that he gave great weight to the State agency medical consultants' light work assessments as they were "supported by Dr. Mackey's permanent light duty restrictions; Dr. Hazlewood's consistent findings of negative straight leg raises, non- antalgic gait, and normal motor strength and good range of motion in the lower extremities; and the claimant's reported daily living activities." (Tr. 18). Although the two medical consultants' opinions were respectively issued on July 12, 2011 and October 24, 2011, the record reflects that the ALJ made an independent determination based on all the evidence and that the ALJ's analysis clearly spanned the entire record. *See Gibbens v. Comm'r of Soc. Sec.,* 659 F. App'x 238, 248 (6th Cir. 2016) ("Where a

non-examining source 'did not review a complete case record, we require some indication that the ALJ at least considered these facts before giving greater weight' to that opinion.") (citation and internal quotation marks omitted); *accord Quinlavin v. Comm'r of Soc. Sec.*, No. 15-CV-731, 2017 WL 583722, at *4 (N.D. Ohio Feb. 14, 2017); *Jacks v. Comm'r of Soc. Sec.*, No. 3:15-CV-309, 2017 WL 540922, at *5 (S.D. Ohio Feb. 10, 2017), report and recommendation adopted *sub nom. Jacks v. Berryhill*, No. 3:15-CV-309, 2017 WL 1134506 (S.D. Ohio Mar. 27, 2017). The ALJ noted Dr. Hazlewood's consistent findings and that Plaintiff's treatment records "continued to be unremarkable concerning objective medical findings." (Tr. 17). Further, Dr. Mackey's assessment regarding Plaintiff's permanent restrictions did not change after October 21, 2009.

Plaintiff further argues that Dr. Mackey's reference to "light duty" is different from the Agency's definition of "light work," implying that the ALJ erroneously believed that Dr. Mackey essentially restricted Plaintiff to "light work." Plaintiff states:

> Dr. Mackey did use the term "light duty" on April 23, 2009, but he defined it as, "No lifting over 5 pounds frequently, 15 lbs. maximum, sit and stand ad lib" (Tr. 237). Dr. Mackey's definition of "light duty" does not match SSA's definition of "light work." In any event, he changed those restrictions on October 7, 2009 and did not use the term "light duty" again (Tr. 219).

(Docket Entry No. 19, at 4). However, the ALJ correctly cited the restrictions in Dr. Mackey's October 2009 report (Tr. 15) and relied upon these restrictions along with other evidence in the administrative record in determining that Plaintiff could perform light work with limitations.

After a thorough review of the record, the Court finds no error in the ALJ's evaluation of the State agency medical consultants' opinions.

*4. The ALJ failed to note Dr. Jeffrey Hazlewood's objective findings.*

Plaintiff argues that, although the ALJ stated that the only significant objective findings were made by Dr. Morton, the ALJ ignored the objective findings of Dr. Jeffrey Hazlewood, which included, among other findings, muscle spasms from June 2009 to October 2012. (Docket Entry No. 13, at 19). The ALJ noted that Dr. Hazlewood's examinations continued to show spasms, but that the examinations also showed negative straight leg raises, non-antalgic gait and good range of motion throughout the lower extremities. (Tr. 15). The ALJ further noted that the remaining medical records from Dr. Hazlewood were unremarkable. (Tr. 16). The Court concludes that the ALJ properly considered the evidence from Dr. Hazlewood.

*5. Plaintiff's residual functional capacity was inaccurate.*

Plaintiff argues that "[w]hen Dr. Mackey's exact restrictions are combined with Dr. Morton's restriction to sedentary work, it is clear that the residual functional capacity (which said that Ms. McWhorter could perform light work, and could sit, stand, walk for six hours each in a workday) is inaccurate." (Docket Entry No. 13, at 20).

As discussed *supra*, the ALJ ultimately determines a plaintiff's RFC. *Coldiron*, 391 F. App'x at 439. The RFC does not need to be based on a particular medical opinion. *Brown*, 602 F. App'x at 331. The RFC does not need to correspond to a physician's opinion because the Commissioner has the final authority to make determinations or decisions on disability. *Rudd*, 531 F. App'x at 728. "[T]he ALJ is charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Id*. at 728.

The Court concludes that the ALJ properly considered the entire medical record in determining Plaintiff's RFC and finds no error in the ALJ's evaluation of opinions that related to Plaintiff's limitations on her RFC.

*6. The ALJ erred in finding that Plaintiff's testimony was not fully credible.*

Plaintiff argues that the ALJ erred in finding that Plaintiff's testimony was not fully credible. Plaintiff asserts that if Plaintiff were fully credible then her testimony that she had to lie down during the day would mean there are no jobs that she can perform. Plaintiff further asserts that efforts to obtain relief for her pain and other impairments support her credibility, citing her back surgery, seeking treatment from orthopedic and pain specialists, trying physical therapy, and taking pain medication.

"In making a credibility determination, Social Security Ruling 96-7p provides that the ALJ must consider the record as a whole, including objective medical evidence; the claimant's statements about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 417 (6th Cir. 2011) (citing SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996)). "Social Security Ruling 96-7p . . . requires the ALJ explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Rogers*, 486 F.3d at 248. "'[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'" *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir.2009) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997)). An ALJ's "credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citing *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112–13 (6th Cir. 2010)). "[H]armless error

analysis applies to credibility determinations in the social security disability context." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

A review of the ALJ's decision reflects that in determining Plaintiff's credibility the ALJ considered the objective evidence; treatment records; medications; that Plaintiff testified that her medications caused sleepiness and weight gain but that her medical records showed that she denied having any adverse side effects; her improvement with treatment; the ALJ's observation that Plaintiff did not appear to be in significant pain while sitting and standing during the hearing; her daily activities; and that she searched for work while alleging disability. (Tr. 15-18).

Accordingly, based upon the record, the Court concludes that the ALJ's findings were supported by substantial evidence. *See Ulman*, 693 F.3d at 714 ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'") (citation omitted).

*7. The ALJ erred in using a "sit and squirm" test.*

Plaintiff argues that the ALJ impermissibly used a "sit and squirm" test by noting at the hearing that Plaintiff did not appear to be in significant pain while sitting and standing and that she moved her arms and hands while speaking. (Docket Entry No. 13, at 22; Docket Entry No. 10, at 17).

Under SSR 96-7p, the ALJ is permitted to "consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." *See* SSR 96-7p; *Blankenship*, 2015 WL 5040223, at *10 (treating doctor's assertion that claimant was unable to walk from the parking lot to work was "seemingly contradicted by the fact that

24

Blankenship was able to walk unassisted from her car to the room where the hearing was being held."); *Wiggins v. Comm'r of Soc. Sec.*, No. 14-CV-10452, 2014 WL 5782770, at *14 (E.D. Mich. Nov. 6, 2014) ("[A]n ALJ is expressly permitted to take into account his own observations at an in-person hearing as part of his evaluation of a claimant's credibility.").

Here, the ALJ's observation was one of several factors in determining Plaintiff's credibility. Accordingly, the ALJ's consideration of this factor was not improper.

*8. The ALJ erred in using intermittent daily activities to support the finding that Plaintiff was not disabled.*

Plaintiff argues that the "ALJ's recitation of activities intermittently performed do not support his finding that the claimant is not disabled." (Docket Entry No. 13, at 23). However, an ALJ may consider daily activities as one factor in the evaluation of subjective complaints. *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("[T]he ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."); 20 C.F.R. §§ 404.1529, 416.929.

The ALJ referred to function reports completed by Plaintiff in which she had fairly normal functioning. (Tr. 17, 150-57, 167-74). The ALJ's consideration of Plaintiff's functioning was just one factor in determining Plaintiff's credibility. Accordingly, the ALJ properly considered Plaintiff's functioning as one factor in determining Plaintiff's credibility.

*9. The ALJ erred in finding that Plaintiff's efforts to work or find work indicated that she was not disabled.*

Plaintiff argues that the ALJ erred in finding that Plaintiff's efforts to work or find work indicated that she was not disabled. (Docket Entry No. 13, at 23). Defendant asserts that

considering Plaintiff's efforts to find work is a logical consideration and that the ALJ did not err in considering this as another factor in determining disability. (Docket Entry No. 18, at 12).

Plaintiff cites *Walston v. Gardner*, 381 F.2d 580 (6th Cir.1967). In *Walston*, the Sixth Circuit held that "[w]here an applicant has unsuccessfully attempted to secure employment, less evidence is needed to support a finding of disability than where the applicant has failed to make such an effort." 381 F.2d at 586-87. However, in *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 843 (6th Cir. 2005), the Sixth Circuit distinguished *Walston*, explaining:

> In *Walston*, the court reversed a determination that a claimant was not disabled by noting that claimant's efforts to find employment were hindered by constant back pain following an accident years before. The court in *Walston* thus made this statement as further proof that the claimant really did suffer from a disability, not as a general evidentiary standard.

*Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 843 (6th Cir. 2005). The Court rejected the plaintiff's argument that *Walston* required "the ALJ to infer that she is truly disabled from her attempts to work." *Id.*

The ALJ noted that in April 2010 Plaintiff was looking for work while applying for disability, but also noted that October 2010 treatment notes reflected that Plaintiff was doing well symptomatically. (Tr. 17, 238). This factor was just one of several factors that the ALJ considered in determining if Plaintiff were disabled. *See Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995) ("Bentley's case must of course be distinguished from situations where the medical evidence uniformly supports a finding of disability; in such cases an unsuccessful work search may even reinforce a disability claim.") (citing *Walston*, 381 F.2d at 586-87). Moreover, Dr. Mackey reported that on November 9, 2009, Plaintiff was given an overall impairment of 22% and that she was looking for work that did not require any physical labor. (Tr. 238). Further, the vocational expert

testified that there were jobs that such an individual could perform, including work as an office clerk, ticket clerk, and information clerk. (Tr. 20, 56-57).

Accordingly, the Court concludes that the ALJ properly considered Plaintiff looking for work while applying for disability as a factor in making his disability determination.

*10. The ALJ's decision is not supported by substantial evidence.*

Lastly, Plaintiff argues that the combined opinions of Dr. Morton and Dr. Mackey "show that the ALJ is in error in finding that Ms. McWhorter can perform light work and that she can stand and walk six hours a day." (Docket Entry No. 13, at 23-24).

As previously discussed, the RFC does not need to be based on a particular medical opinion. *Brown*, 602 F. App'x at 331. The RFC does not need to correspond to a physician's opinion because the Commissioner has the final authority to make determinations or decisions on disability. *Rudd*, 531 F. App'x at 728.

After a thorough review of the entire record, the Court concludes that the ALJ's findings are supported by substantial evidence.

## V. CONCLUSION

In sum, the Court concludes that the findings of the ALJ are supported by substantial evidence on the record as a whole, and are free from legal error. With such support, the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *E.g., Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

For all of the reasons stated, the Court will deny Plaintiff's *Motion for Judgment on the Administrative Record*. (Docket Entry No. 12).

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE